Harold J. Hughes, J.
This proceeding, brought by a public employees’ union pursuant to article 78 of the Civil Practice Law and Rules, seeks to enjoin the Chief Executive of the State of New York and other State officers from refusing ^negotiate concerning retirement benefits under a reopener clause in their current collective bargaining agreement. Petitioners seek a declaration that so much of chapter 382 of the Laws of 1973 ■as imposes a retirement program upon the union’s bargaining *437 unit and removes retirement benefits from the scope of legally negotiable terms and conditions of employment is unconstitutional.
The petitioner union is the duly certified negotiating representative for employees of the State of New York in the Security Services Unit (see Matter of Civil Serv. Employees Assn. v. Helsby, 32 A D 2d 131, affd. 25 N Y 2d 842). After collective bargaining pursuant .to article 14 of the Civil Service Law, ■the union and the 'State entered into an agreement effective April 1, 1972 through March 31, 1974. Under this contract, the State agreed to and did prepare, introduce and recommend passage during the 1972 legislative session of certain legislation designed to implement the terms of the contract with respect to retirement and pension benefits. In addition, the parties agreed to reopen the contract to further negotiation relating to retirement, among other things, at the request of the union after November 1, 1972.
¡ The union did request the reopening of negotiations on the subject of retirement. Partial agreement was reached with respect to the introduction of legislation extending certain temporary benefits and a conditional reopening of Social Security coverage, which was reduced to writing and signed on May 2, 1973. It was further agreed that negotiations would continue with respect to retirement benefits through June 1, 1973 or until the end of the legislative session, whichever occurred first.
In the meantime, legislation was introduced on May 18, 1973 .and passed on May 23, 1973 which became chapter 382 with the 'approval of the Governor on May 31, 1973. The Legislature adjourned on May 27, 1973.
It is petitioners’ main contention that chapter 382 of the Laws of 1973 is unconstitutional in that it impairs the collective bargaining agreement between Council 82 and the State of New York in violation of section 10 of article I of the Constitution of the United States. Under the agreement, retirement benefits for employees was a subject that could be reopened for negotiations between the union and the State. Chapter 382, inter alia, removed retirement benefits from the definition of ‘‘ terms and conditions of employment ” in section 201 (subd. 4) of the Civil Service Law. Thus, the statute eliminated the employer’s obligation under the agreement to negotiate retirement benefits. In addition, the statute provided for limitations on retirement and death benefits applicable to new entrants (§47) and provided for the temporary suspension of retirement negotiations and a plan for coalition negotiations (§ 48).
*438 The obligations of a contract are impaired by a law which renders them invalid or releases or extinguishes them (Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 398, 431). The Supreme Court went on to state, however, that the State has authority to safeguard the vital interests of its people and if does not matter that the legislation appropriate to that end has the result of modifying or abrogating contracts already in effect. The economic interest of the State may justify the exercise of its continuing and dominant. protective power notwithstanding interference with contracts. The test is whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end.
While it is true that the legislation in Blaisdell (supra) was passed as the result of an emergency and the Minnesota Legislature had so stated in a preamble, legislation passed in the public interest for the economic welfare of the State was upheld in Veix v. Sixth Ward Assn. (310 U. S. 32) although the court noted that the act under review was not emergency legislation but one of a long series of regulations. The Supreme Court reiterated the principle that the authority of the State, which allows it to enact legislation which impairs contracts, is not limited to health, morals and safety, but extends to economic needs as well.
Assuming that the subject statute did in fact impair an existing obligation on the part of the public employer to negotiate retirement benefits with the union, such statute was passed pursuant to the police power (cf. Matter of Shelofsky v. Helsby, 39 A D 2d 168, affd. 32 N Y 2d 54) and it has been said that this power is paramount to any rights under contract between individuals (Totten v. Saionz, 38 A D 2d 630). The court concludes that the legislation, which has for its purpose the maintenance of a stable economic environment in the public sector, is addressed to a legitimate end and the measures taken are reasonable and (appropriate to that end. The court holds that chapter 382 of the Laws of 1973 does not violate section 10 of article I of the United States Constitution.
The court notes that the legislation in question does not attempt to vitiate any employee benefits which have become vested *439 (cf. Matter of Associated Teachers of Huntington v. Board of Educ., Union Free School, Dist. No. 3, Town of Huntington, 33 N Y 2d 229 [decided Dec. 27, 1973]; Kranker v. Levitt, 30 N Y 2d 574). If the legislation did impair existing benefits, a different,result may have been indicated.
For .this same reason, it cannot be said that .the statute violates ¡section 7 of article V of the New York State Constitution, which provides in part: ‘ ‘ membership in any pension or retirement system of the state * * * -shall be a contractual relationship, the benefits of which shall not be diminished or impaired. ’ ’
The contractual right to negotiate retirement benefits is not a “ benefit ” of membership in the retirement system within the meaning of section 7 of article V. The courts have generally construed this provision ¡as a prohibition against the reduction of benefits (see, e.g., Matter of Ayman v. Teachers’ Retirement Bd. of City of N. Y., 9 N Y 2d 119; Birnbaum v. New York State Teachers Retirement System, 5 N Y 2d 1), but it does not affirmatively guarantee that members shall always have the means, by collective bargaining, to seek improvement in benefits.
Petitioners also assert that the statute violates section 17 of article I of the New York State Constitution which provides that employees shall have the right to organize and to bargain collectively through representatives of .their own choosing. There are two aspects of the constitutional provision that must be discussed: the right to bargain collectively; and the right to bargain through representatives of their own choosing.
Prior to the adoption of the Taylor Law in 1967, public employers were permitted, but not required, to bargain and contract with representatives of their employees. With the enactment of .the Taylor Law (Civil Service Law, art. 14), public employers were obliged to negotiate with a recognized employee organization all ¡terms and conditions of employment except those terms and conditions which are expressly prohibited from collective bargaining by a ¡statutory provision (see Board of Educ. of Union Free School Dist. No. 3, Town of Huntington v. Associated Teachers of Huntington, 30 N Y 2d 122, supra). Since the obligation to engage in collective bargaining was imposed on the public employer by statute, it follows that the obligation may also be limited by statute (see, e.g., Matter of Shelofsky v. Helsby, 39 A D 2d 168, 172, supra). The court concludes therefore, that the elimination of the public employer’s obligation to collectively negotiate retirement benefits does not violate section 17 of article I of the New York State Constitution.
*440 In its reply .brief, however, petitioners emphasize that the main thrust of their argument is that the union members have been deprived of the right to choose the representatives of their choice because the legislation containing new provisions relating to retirement benefits had been previously negotiated with the Civil Service Employees Association (CSEA). It is also asserted (petition, par. 14) that the Office of Employee Relations had agreed with CSEA that the retirement benefits in the CSEA agreement would be imposed upon all units of employees of the State. These allegations were denied in respondents’ answer.
The court first notes that the part of the statute (L. 1973, ch. 382, § 47) which provides limitations on retirement and death benefits is applicable only to new entrants. Thus, it would not affect those who were members of Council 82 when the legislation became effective. Assuming paragraph 14 of the petition to be true, no present employees were affected by the retirement limitations and, thus, they were not denied the right to bargain through representatives of their own choosing.
Assuming, however, that members of Council 82 were affected by the legislation, through loss of the right to negotiate retirement benefits or otherwise, and assuming that the legislation in question was passed after its terms were negotiated by the Office of Employee Relations with CSEA, there would still be no violation of ¡section 17 of article I. For once it is determined that the Legislature has the power to invalidate some of the public employer’s obligations, it is of little import that it exercised this power in conformity with an agreement between the executive branch of[1] government and another bargaining agent.
Finally, the statute does not violate petitioners’ rights .to equal protection guaranteed by the Fourteenth Amendment of the United States Constitution. The amendments were applicable to all public employees and were not imposed upon petitioners or the members of Council 82 any more or less than they were imposed upon all State employees. Assuming that the union was the only employee representative actually negotiating with respondents at the time the legislation was signed into law, this was merely fortuitous and does not .constitute a denial of equal .protection.
The court has examined petitioners’ other contentions and finds them to be without ¡merit.
The petition is dismissed, without costs.

. It has been pointed out that retirement benefits are an area where the government has been especially concerned because of an accumulating economic burden on retirement systems and the public fisc out of which some or all retirement reserves come (Board of Educ. of Union Free School Dist. No. 3, Town of Huntington v. Associated Teachers of Huntington, 30 N Y 2d 122,133, dissenting opa. of Bkeisel, 3.; and see L. 1071, eh. 733).